


UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 16CR10014 |
| | ) | |
| v. | ) | Violations: |
| | ) | 18 U.S.C. § 1341 (Mail Fraud) |
| CHRISTOPHER THOMPSON, | ) | 18 U.S.C. § 664 (Theft or Embezzlement from |
| KIMBERLY THOMPSON, | ) | Employee Benefit Plan); |
| AIR QUALITY EXPERTS, INC. and | ) | 18 U.S.C. § 1027 (False ERISA Statements); |
| AQE, INC., | ) | 18 U.S.C. § 2 (Aiding and Abetting); and |
| Defendants | ) | 18 U.S.C. § 981(a)(1)(C) & 18 U.S.C. § 2461(c) (Criminal Forfeiture) |

**INDICTMENT**

The United States Grand Jury, in and for the District of Massachusetts, charges that,

**COUNTS ONE THROUGH EIGHTEEN**
**(18 U.S.C. § 1341 -- Mail Fraud)**

At times relevant to this Indictment:

1). Defendants CHRISTOPHER THOMPSON ("THOMPSON") and KIMBERLY THOMPSON ("K. THOMPSON") resided in Windham, New Hampshire. Together, they owned and operated Defendants AIR QUALITY EXPERTS, INC. ("AIR QUALITY") and AQE, INC. ("AQE"). THOMPSON was the president and treasurer of AIR QUALITY. K. THOMPSON was the president of AQE and the clerk of AIR QUALITY.

2. Defendant AIR QUALITY was incorporated in 1987 in New Hampshire and was located at 23 Hall Farm Road in Atkinson, N.H. It was in the business of asbestos abatement and generally worked as a specialized subcontractor for larger demolition contractors, and was an employer of employees employed in an industry affecting interstate and foreign commerce within the meaning of Title 29, United States Code, Sections 142, 152, 186 and 402.

DOCKETED

3. Defendant AQE was incorporated in New Hampshire in 2005 and listed another address in Windham, New Hampshire (the THOMPSON home) as its principal place of business. In reality, AQE operated from the same 23 Hall Farm Road location as AIR QUALITY. Like AIR QUALITY, AQE was in the business of asbestos abatement and generally worked as a specialized subcontractor for larger demolition contractors, and was an employer of employees employed in an industry affecting interstate and foreign commerce within the meaning of Title 29, United States Code, Sections 142, 152, 186 and 402. AQE operated under the same management, used the same equipment and employed the same workforce as AIR QUALITY. AQE signed a collective bargaining agreement with the Massachusetts Laborers' District Council on September 22, 2005.

The Collective Bargaining Agreements

4. The Laborers International Union of North America ("LIUNA"), through its affiliated locals, represented and admitted to membership persons who were employed by various companies involved in the demolition industry throughout the United States.

5. The Massachusetts Laborers' District Council of the LIUNA (the "MLDC") was a labor organization in which employees who were employed in an industry affecting commerce, that is, the demolition industry, participated through their local unions and other subordinate bodies of the MLDC and which existed for the purpose of dealing with employers concerning such employees' hours, wages and working conditions within the meaning of Title 29, United States Code, Sections 142, 152, 402 and 1003. The MLDC acted as an intermediary between the LIUNA and its local unions.

6. The Building Wreckers' Local Union 1421 of the LIUNA ("Local 1421") was located in Woburn, Massachusetts, and was a labor organization in which employees who were

employed in an industry affecting commerce, that is, the demolition industry, participated and which existed for the purpose of dealing with employers concerning such employees' hours, wages and working conditions within the meaning of Title 29, United States Code, Sections 142, 152, 402, and 1003.

7. Since approximately 2004, the MLDC, on behalf of its affiliates including Local 1421, entered into three consecutive collective bargaining agreements (the "CBAs") with the Massachusetts Building Wreckers and Environmental Remediation Association, Inc., acting for and on behalf of and under the authority of its members, including AQE. The effective dates of the CBAs were: (a) July 1, 2004 through June 30, 2008, (b) July 1, 2008 through June 30, 2012, and (c) July 1, 2012 through June 30, 2016. The CBAs governed the remittance of fringe benefit contributions to the following employee welfare and pension benefit plans, each of which was subject to the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"): the Massachusetts Laborers' Health & Welfare Fund, the Massachusetts Laborers' Pension Fund, the Massachusetts Laborers' Annuity Fund, the Massachusetts Laborers' Legal Services Fund, the New England Laborers' Training Trust Fund and the New England Laborers' Health and Safety Fund (collectively, the "ERISA Funds"). The CBAs also governed the remittance of fringe benefit contributions to the following funds not subject to the provisions of ERISA: the Massachusetts Laborers' Unified Trust, the New England Laborers' Labor-Management Cooperation Trust, and the Massachusetts Demolition Industry Advancement Program. The CBAs' requirements applied to the wrecking and dismantling of buildings and all structures that took place in Massachusetts and in Salem, New Hampshire between July 1, 2004 and June 30, 2016.

8. Article XVIII, Section 2 of the CBAs titled "WORK JURISDICTION

COVERAGE AND DESCRIPTION OF BUILDING WRECKING AND ENVIRONMENTAL REMEDIATION LABORERS' SPECIALIST WORK" defines some of the worked covered by the CBAs ("covered employment") and states in pertinent part,

> The removal, handling and / or packaging of asbestos, lead paint, microbial, mold and all hazardous and toxic materials, oil and fuel tanks and other contaminates shall be the work of the environmental remediation laborers.

9. In or around September 22, 2005, K. THOMPSON, on behalf of AQE, agreed to be bound by any collective bargaining agreement by and between the MLDC and the Massachusetts Building Wreckers and Environmental Remediation Association, Inc., which at the time included the 2004-2008 CBA and ultimately included all three CBAs. AQE was, therefore, an employer within the meaning of Title 29, United States Code, Section 186, and was required to accurately report to the ERISA Funds the number of hours worked by members of the LIUNA and to make contributions to the ERISA Funds accordingly. This generally was accomplished by filing monthly "remittance reports" with the Massachusetts Laborers' Benefit Funds (the "MLBF"), reporting the hours worked by members of LIUNA Local 1421 and making the appropriate contributions to the ERISA Funds. THOMPSON and K. THOMPSON directed members of their office staff to send the monthly remittance reports, accompanied by AQE checks made payable to the MLBF, purportedly in the amounts of the required payments to the ERISA Funds, by United States mail from Atkinson, New Hampshire to the MLBF offices in Burlington, Massachusetts, and, prior to April 2011, to a post office box utilized by the MLBF.

10. Upon receipt of the signed CBA mentioned in paragraph 9 above, the MLBF sent a letter dated October 19, 2005 to the defendant K.THOMPSON which stated in part,

> As you know, your collective bargaining agreement applies to all laborers' work as set forth in that collective bargaining agreement which is performed by employees of your company. There is no

> exception for, or exclusion of, work that is performed on residential work, "small" jobs, so-called non-union jobs where other contractors on the job do not have union contracts. All of this work is covered by, and included in, the contract with the Massachusetts Laborers' District Council.
>
> **The contract covers all laborer employees whether they have joined the union or not.** The contract covers all employees performing laborers' jurisdiction work whether they are family members, college students or anyone else that you may employ that does not seem to be the usual laborer from the union hall.

(Emphasis in original)

## The Scheme to Defraud

11. Between in or around September 2005 through October 2014, the defendants THOMPSON, K. THOMPSON, AQE, and AIR QUALITY devised and intended to devise, and engaged in a scheme and artifice to defraud the MLBF by failing to report to the MLBF hours worked by members of Local 1421, and thereby failed to remit over two million dollars ($2,000,000) in contributions due and owing to the MLBF.

12. It was a part of the scheme that the Defendants operated a single business from a single location using the same workforce and equipment and under the same management. The Defendants conducted this single business under both the union signatory Defendant AQE and the non-union signatory Defendant AIR QUALITY depending upon the unique circumstances of each job. The Defendants opted to engage in "covered employment" as described in paragraph 8 above under the non-union signatory Defendant Air Quality whenever conditions permitted because that choice was generally financially advantageous. This "double breasted shop" arrangement violated the CBAs.

13. It was a part of the scheme that the Defendants submitted monthly remittance reports to the MLBF, but only reported hours worked by members of LIUNA Local 1421 when

the Defendants paid those hours worked from the union signatory Defendant AQE. The Defendants never reported to the MLBF hours worked by members of LIUNA Local 1421 when the Defendants paid those hours worked from the non-union signatory Defendant Air Quality. In this way, the Defendants knowingly avoided the payment of contributions to the MLBF by under reporting the hours worked by members of LIUNA Local 1421.

14. It was a further part of the scheme that the Defendants failed to report so called "shop hours" (time spent preparing and travelling to a job site at the beginning of the day and returning and unloading trucks and equipment at the end of the day) to the MLBF even when members of LIUNA Local 1421 were paid by the union signatory Defendant AQE for work related to those "shop hours." Pay for "shop hours" for members of LIUNA Local 1421 was routinely paid from the payroll of the non-signatory Defendant AIR QUALITY at less than the union rate and without contributions for benefits.

15. It was a further part of the scheme that the Defendants concealed and caused to be concealed from the MLBF the fact that members of LIUNA Local 1421 were paid from the payroll account of the non-signatory Defendant AIR QUALITY for "covered employment" within the meaning of the CBAs.

16. On or about the dates set forth below, in the District of Massachusetts, the District of New Hampshire, and elsewhere, the defendants,

**CHRISTOPHER THOMPSON,**
**KIMBERLY THOMPSON,**
**AIR QUALITY EXPERTS, INC.,** and
**AQE, INC.,**

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did place and cause to be placed in post offices and authorized depositories for mail

matter any matter and thing whatever to be sent and delivered by the Postal Service, and did cause to take and receive therefrom any such matter and thing, for the purpose of executing and attempting to execute said scheme and artifice to defraud, in that the Defendants did place and cause to be placed in the United States mail remittance reports to the MLBF as set forth below which omitted hours worked by members of LIUNA Local 1421 and did thereby fail to remit approximately $2 million in contributions due and owing to the MLBF.

| Count | Approximate Date of Mailing in Furtherance of Scheme | Reporting period |
|---|---|---|
| One | February 17, 2011 | January 2011 |
| Two | March 17, 2011 | February 2011 |
| Three | April 13, 2011 | March 2011 |
| Four | May 18, 2011 | April 2011 |
| Five | June 15, 2011 | May 2011 |
| Six | September 16, 2011 | August 2011 |
| Seven | October 19, 2011 | September 2011 |
| Eight | November 12, 2011 | October 2011 |
| Nine | January 19, 2012 | December 2011 |
| Ten | February 9, 2012 | January 2012 |
| Eleven | June 8, 2012 | May 2012 |
| Twelve | August 16, 2012 | July 2012 |
| Thirteen | October 18, 2012 | September 2012 |
| Fourteen | November 15, 2012 | October 2012 |
| Fifteen | April 17, 2013 | March 2013 |
| Sixteen | August 15, 2013 | July 2013 |

| | | |
|---|---|---|
| Seventeen | September 17, 2013 | August 2013 |
| Eighteen | October 17, 2013 | September 2013 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

**COUNT NINETEEN**
**(18 U.S.C. § 664 -- Theft or Embezzlement from Employee Benefit Plan)**

17. The allegations of paragraphs 1 through 15 are realleged and incorporated as if fully set forth herein.

18. On or about and between September 2005 through October 2014, in the District of Massachusetts, the District of New Hampshire, and elsewhere,

**CHRISTOPHER THOMPSON,**
**KIMBERLY THOMPSON,**
**AIR QUALITY EXPERTS, INC.,** and
**AQE, INC.,**

defendants herein, embezzled, stole and unlawfully and willfully abstracted and converted to their own use moneys, funds, securities, premiums, credits, property and other assets of one or more employee welfare benefit plans and employee pension benefit plans subject to Title I of ERISA, and any fund connected with such plans, to wit: the right to collect monies and funds owed to the Massachusetts Laborers' Health & Welfare Fund, the Massachusetts Laborers' Pension Fund, and the Massachusetts Laborers' Annuity Fund.

All in violation of Title 18, United States Code, Sections 664 and 2.

**<u>COUNTS TWENTY THROUGH THIRTY SEVEN</u>**
**(18 U.S.C.§ 1027 -- False ERISA Statements)**

19. The allegations of paragraphs 1 through 15 are realleged and incorporated as if fully set forth herein.

20. On or about the dates set forth below, in the District of Massachusetts, the District of New Hampshire, and elsewhere,

**CHRISTOPHER THOMPSON,**
**KIMBERLY THOMPSON,**
**AIR QUALITY EXPERTS, INC.,** and
**AQE, INC.,**

defendants herein, in documents required by Title I of ERISA to be published and kept as part of the records of any employee welfare benefit plans and employee pension benefit plans, did make and cause to be made false statements and representations of fact, knowing them to be false, and did knowingly conceal, cover up and fail to disclose facts the disclosure of which was required by Title I of ERISA, and which were necessary to verify, explain, clarify and check for accuracy and completeness reports required by such title to be published, to wit: the Defendants submitted and caused to be submitted to the MLBF as described in Counts One through Eighteen of the Indictment false remittance reports in which they knowingly omitted and caused others to knowingly omit hours worked by members of LIUNA Local 1421.

| Count | Reporting period |
|---|---|
| Twenty | January 2011 |
| Twenty-one | February 2011 |
| Twenty-two | March 2011 |
| Twenty-three | April 2011 |

| | |
|---|---|
| Twenty- four | May 2011 |
| Twenty-five | August 2011 |
| Twenty-six | September 2011 |
| Twenty-seven | October 2011 |
| Twenty-eight | December 2011 |
| Twenty-nine | January 2012 |
| Thirty | May 2012 |
| Thirty-one | July 2012 |
| Thirty-two | September 2012 |
| Thirty-three | October 2012 |
| Thirty-four | March 2013 |
| Thirty-five | July 2013 |
| Thirty-six | August 2013 |
| Thirty-seven | September 2013 |

All in violation of Title 18, United States Code, Sections 1027 and 2.

**FORFEITURE ALLEGATIONS**
**(18 U.S.C. § 981(a)(l)(C) & 28 U.S.C. § 2461(c))**

The United States Grand Jury, in and for the District of Massachusetts, further charges that:

1. Upon conviction of any of the offenses alleged in Counts One through Nineteen of this Indictment,

**CHRISTOPHER THOMPSON,**
**KIMBERLY THOMPSON,**
**AIR QUALITY EXPERTS, INC.,** and
**AQE, INC.,**

defendants herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), jointly and severally as to Counts One through Nineteen, any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offenses.

2. If any of the property described in paragraph 1 hereof as being forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as a result of any act or omission of the defendants --

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of this Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON OF THE GRAND JURY

FRED M. WYSHAK, JR.
ASSISTANT U.S. ATTORNEY

U.S. DISTRICT OF MASSACHUSETTS; January 19, 2016.
Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK

1-19-16

11:00 am