# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal Action |
| CHRISTOPHER THOMPSON; ) | No. 16-10014-PBS |
| KIMBERLY THOMPSON; ) | |
| AIR QUALITY EXPERTS, INC.; and ) | |
| AQE, INC., ) | |
| ) | |
| Defendants. ) | |

## ORDER

January 11, 2017

Saris, C.J.

The government moves in limine to admit testimony from two[1] witnesses about customs and practices in the construction industry concerning "double-breasted" operations and "shop hours." Docket Nos. 89, 90. The defendants move to exclude such testimony from the government's witnesses. Docket No. 97. The government also moves to exclude such testimony from a witness[2] for the defendants. Docket No. 120.

---

[1] The government initially also named John Welsh as a custom and practice witness but did not press him as a witness at the evidentiary hearing.

[2] The defendants initially also named Marc Furman as a custom and practice witness but did not press him as a witness at the evidentiary hearing.

The government characterizes their industry custom and practice witnesses as lay witnesses but suggests that those witnesses can be certified as experts if necessary. Docket No. 80. The defendants offer their witness as an expert. Docket No. 105. After an evidentiary hearing, neither party pressed a request to certify the witnesses as experts under Federal Rule of Evidence 702.

Lay witnesses may only opine on matters within their personal knowledge that are "not based on scientific, technical, or other specialized knowledge within the scope of [Federal Rule of Evidence] 702." Fed. R. Evid. 701(c). A lay witness may testify based on "particularized knowledge that the witness has by virtue of his or her position in [a] business" but not if the testimony crosses over into specialized knowledge within the realm of an expert. Fed. R. Evid. 701, advisory committee's note. "[T]he line between expert testimony under Rule 702 and lay opinion testimony under Rule 701 is, in practice, not an easy one to draw." United States v. Valdivia, 680 F.3d 33, 50 (1st Cir. 2012).

To the extent that the proffered testimony concerns the legality of double-breasted operations and legal conclusions regarding the treatment of shop hours in the collective bargaining agreements at issue, the testimony is inadmissible. Witnesses may generally not testify on pure questions of law.

2

See, e.g., Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 99 (1st Cir. 1997).

Lay witnesses may express certain opinions about business operations and industry practices so long as the testimony is based on personal knowledge. See, e.g., United States v. Fallon, 470 F.3d 542, 547 (3d Cir. 2006); Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1223 (11th Cir. 2003). Testimony may be appropriate to the extent that it helps the jury understand the industry custom and practice concerning double-breasted operations: their purpose, their prevalence, and how they tend to be set up and operated. Testimony may also be appropriate to the extent that it explains industry custom and practice regarding so-called "shop hours" or provides extrinsic evidence on the collective bargaining agreements' coverage of "shop hours."

The government offers two witnesses on industry custom and practice: Barry McAnarney and Thomas Gunning.

Barry McAnarney is the Fund Administrator and Executive Director of the Massachusetts Laborers Benefit Funds. The bulk of his proffered testimony concerns his views on when a double-breasted operation violates the collective bargaining agreements at issue. That is a pure issue of law that is not an appropriate subject for testimony. He also does not have a sufficient basis for knowledge to testify on custom and practice. He has had

3

limited experience with double-breasted operations in his eight years in his current position, and it is not clear what relevant knowledge he has on the subject from his prior positions. He testified at the evidentiary hearing that he dealt with four to five double-breasted operations a year with respect to delinquency investigations. He would investigate a double-breasted operation if it had a common pool of labor and common location. However, he showed minimal knowledge of the custom and practice in the industry for setting up these operations. The primary sources of his knowledge of double-breasted operations are delinquency counsel for the Funds, with whom he discussed how to identify double-breasted businesses that were operating in violation of collective bargaining agreements and that may be the target of a delinquency suit. He also talked to auditors who conducted investigations into double-breasted operations. He offers little actual first-hand knowledge about how double-breasted companies in the construction industry generally operate. The government has failed to provide sufficient evidence that there is a reliable foundation for his custom and practice testimony. He may testify at trial, however, as a fact witness regarding the Funds' relationship with the defendants and the Funds' operations.

    Thomas Gunning is the Executive Director of the Building Trades Employers Association. He testified at the evidentiary

hearing that he has personal knowledge of double breasted operations from his twenty-plus years in that position as well as his position as a trustee of laborers' funds. He testified that through those experiences, he has only come across three or four double breasted operations. Based on that personal knowledge, he may properly testify at trial as to the prevalence of double breasted operations in the construction industry. Gunning also testified that he has personal knowledge as to the custom and practice in the construction industry of counting "drive hours" as hours worked under a collective bargaining agreement. That is also proper testimony at trial.

The defendants offer David Tiernan as a witness on industry custom and practice. David Tiernan is an executive of an environmental consulting company who has experience working with asbestos abatement companies and clients who retain those companies. He testified that he has experience with construction contract bidding and that through that experience, he has commonly observed the existence of a union company and nonunion company operating out of the same location with similar names, sharing management and laborers. He may testify at trial as to those observations.

The government's motion to admit testimony from John Welsh, Docket No. 89, is **DENIED**. The government's motion to admit testimony, Docket No. 90, is **DENIED** as to McAnarney and **ALLOWED**

5

as to Gunning. The defendants' motion to exclude the government's testimony, Docket No. 97, is **ALLOWED** as to McAnarney and **DENIED** as to Gunning. The government's motion to exclude testimony by Tiernan, Docket No. 120, is **DENIED**.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge